[Cite as *Lundeen v. Graff*, 2015-Ohio-4462.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

James E. Lundeen, Sr.,        :

      Plaintiff-Appellant,       :          No. 15AP-32
                                          (C.P.C. No. 12CV-14032)

v.                                  :

                                           (ACCELERATED CALENDAR)
Douglas Graff et al.,         :

      Defendants-Appellees.     :

D E C I S I O N

Rendered on October 27, 2015

*James E. Lundeen, Sr.*, pro se.

*Reminger Co., L.P.A., Patrick Kasson*, and *Zachary B. Pyers*, for appellees.

APPEAL from the Franklin County Court of Common Pleas.

PER CURIAM.

{¶ 1} James E. Lundeen, Sr., plaintiff-appellant, appeals three judgments of the Franklin County Court of Common Pleas. In a June 6, 2014 decision, the trial court granted the November 22, 2013 motion for summary judgment filed by Graff & McGovern, L.P.A., Douglas E. Graff, and Levi Tkach, defendants-appellees. In a November 19, 2014 decision, the trial court denied appellant's November 5 and 17, 2014 motions to amend his complaint. In a December 3, 2014 decision, the trial court granted the July 14, 2014 motion for summary judgment filed by appellees.

{¶ 2} In 1965, appellant obtained his license to practice medicine in Ohio. On May 11, 2011, the Ohio State Medical Board ("board") found there was clear and convincing evidence of multiple violations of R.C. Chapter 4731 by the improper treatment and prescribing of controlled substances and other drugs of abuse, and suspended appellant's license to practice medicine. An administrative hearing took place

over several days in August, September, and October 2011. Among other witnesses, the board's expert witness John W. Cunningham, M.D., testified at the hearing. Appellant did not appear at the hearing to testify but provided a written statement. Appellant also submitted the written report of a witness he intended to rely on as an expert, Dr. David Ross, but the hearing examiner refused to permit the report because Dr. Ross's opinions were not provided under oath, were not subject to cross-examination by the State of Ohio ("state"), and were not subject to observation by the hearing examiner. Because he did not appear at the hearing, Dr. Ross was not formally offered as an expert witness and the examiner did not rule him to be qualified to testify as an expert witness. On November 18, 2011, the hearing examiner issued a 358-page report and recommendation in which she found numerous departures from the minimal standards of care and recommended permanent revocation of appellant's license to practice medicine in Ohio. After consideration at its December 14, 2011 meeting, the board adopted the hearing examiner's report and ordered that appellant's license to practice medicine in Ohio be permanently revoked. Appellees represented appellant in the administrative proceedings before the board.

{¶ 3} Appellees filed an appeal of the board's order on appellant's behalf with the Franklin County Court of Common Pleas. The common pleas court affirmed the board's order. Appellees then withdrew as appellant's counsel. Appellant, pro se, appealed the judgment of the common pleas court and this court affirmed the judgment in *Lundeen v. State Med. Bd. of Ohio*, 10th Dist. No. 12AP-629, 2013-Ohio-112.

{¶ 4} On November 8, 2012, appellant filed the present action against appellees. Count 1 alleged breach of fiduciary duty/breach of contract. Count 2 alleged legal malpractice/negligence.

{¶ 5} On November 22, 2013, appellees filed a motion for summary judgment with regard to Count 2, which alleged legal malpractice. Appellees alleged that appellant had no permissible expert testimony to support his claim. On June 6, 2014, the common pleas court, as pertinent to this appeal, granted appellees' November 22, 2013 motion for summary judgment. The court rejected the affidavit and supplemental affidavit of appellant's legal expert, attorney J.C. Ratliff. The court found Ratliff's first affidavit was based on hearsay, and the supplemental affidavit was based on facts inconsistent with the record and pleadings. The court concluded that Ratliff was not a "qualified expert

witness" on the issue of the applicable standard of care because his opinion was not reliable. The court also noted that, even if it were to consider Ratliff's "expert" opinion, summary judgment would still be appropriate because the complained of "negligent acts" of appellees were merely strategic trial decisions subject to the professional judgment rule.

{¶ 6} On July 14, 2014, appellees filed a second motion for summary judgment with regard to Count 1 of appellant's complaint, which was based on appellees' decision not to call Dr. Ross to testify live at the administrative hearing. Appellees argued that appellant's allegation in Count 1, while labelled as a breach of contract/breach of fiduciary duty claim, was actually a malpractice claim that was barred by collateral estoppel, barred by the professional judgment rule, and unsupported by expert testimony.

{¶ 7} On November 5, 2014, appellant filed a motion to amend his complaint to add a claim for the tort of conversion. On November 17, 2014, appellant filed a second motion to amend his complaint to add a defendant, Dr. Cunningham, and four additional counts sounding in fraud and collusion. On November 19, 2014, the trial court denied appellant's two motions to amend his complaint. The court found there was undue delay in bringing the motions, and prejudice would result to Dr. Cunningham after the case had been pending for so long.

{¶ 8} On December 3, 2014, the trial court issued a decision and entry in which it, as pertinent to this appeal, granted appellees' July 14, 2014 motion for summary judgment. The trial court found that Count 1 of appellant's complaint sounded in legal malpractice rather than breach of fiduciary duty, and such a claim was barred by the professional malpractice rule and appellant's lack of expert testimony.

{¶ 9} Appellant appeals the June 6, November 19, and December 3, 2014 judgments of the trial court, asserting the following assignments of error:

> [I.] The trial court erred by granting summary judgment for Defendants on Count II of Lundeen's complaint, sounding in legal malpractice / negligence. The lower court erred when it granted summary judgment when genuine issues of material fact existed and the moving parties were not entitled to judgment as a matter of law.
>
> [II.] The trial court erred by granting summary judgment for Defendants on Count I of Lundeen's complaint sounding in breach of fiduciary duty / breach of contract. The lower court

erred when it granted summary judgment when genuine issues of material fact existed and the moving parties were not entitled to judgment as a matter of law.

[III.] The trial court erred when it did not permit Lundeen to amend his complaint to add a count for conversion of funds.

[IV.] The trial court erred when it did not permit Lundeen to amend his claim to include a newly identified defendant and four counts relevant to the newly identified defendant acting in collusion with an established defendant.

{¶ 10} Appellant argues in his first assignment of error that the trial court erred when it granted appellees' motion for summary judgment with regard to his legal malpractice claim. Summary judgment is appropriate when the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the non-moving party, and that conclusion is adverse to the non-moving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 11} When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the non-moving party has no evidence to prove its case. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the non-moving party has no evidence to support its claims. *Id.* If the moving party meets its burden, then the non-moving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Civ.R.

56(E); *Dresher* at 293. If the non-moving party does not so respond, summary judgment, if appropriate, shall be entered against the non-moving party. *Id.*

{¶ 12} To prevail on a claim for legal malpractice based on negligent representation, a plaintiff must establish that: (1) the attorney owed a duty or obligation to the plaintiff, (2) the attorney breached the obligation and failed to conform to the requisite standard, and (3) the conduct complained of is causally connected to the resulting damage or loss. *Vahila v. Hall*, 77 Ohio St.3d 421 (1997), syllabus. The failure of a party asserting a legal malpractice claim to establish any one of the three elements entitles the opposing party to summary judgment. *Katz v. Fusco*, 10th Dist. No. 97APE06-846 (Dec. 9, 1997).

{¶ 13} In granting appellees' motion for summary judgment on Count 2 in appellant's complaint, which sounded in legal malpractice/negligence, the trial court found the following: (1) because the statements in Ratliff's first affidavit were all based on the facts as told to Ratliff by appellant, the affidavit is based entirely on hearsay and is inadmissible, (2) Ratliff's opinion in his supplemental affidavit that appellees failed to provide expert testimony at the board hearing did not take into consideration that appellees retained Dr. Ross as an expert for the board hearing, but there was an issue regarding payment for expert testimony and legal fees, and did not take into account that Dr. Ross's expert reports were submitted during the board hearing, (3) although appellant claims that Dr. Ross's reports were "unsigned," there was no evidence demonstrating such, and (4) even if the court were to consider Dr. Ross's expert affidavits, summary judgment would still be appropriate for appellees because the complained of "negligent acts" of appellees were strategic trial decisions subject to the professional judgment rule.

{¶ 14} We first note that, under his first assignment of error, appellant does not raise any argument regarding the first affidavit, and, with respect to the supplemental affidavit, appellant only takes issue with the trial court's third finding, as set forth above. Appellant does not contest the trial court's second finding or its alternative fourth finding. With regard to the trial court's third finding, appellant argues that, although he did not attach Dr. Ross's unsworn expert report to Ratliff's affidavit, the court's June 28, 2012 decision in the original appeal of the board order confirmed that Dr. Ross's report was unsworn, and appellees destroyed his client legal file, leaving him without actual paper file copies of the unsworn reports.

{¶ 15} Although we could simply affirm summary judgment on the alternative fourth ground listed above, which, again, appellant does not contest on appeal, we will address appellant's argument regarding Dr. Ross's expert reports. We first reject appellant's argument that he was unable to attach Dr. Ross's expert reports because appellees destroyed his legal file. Appellant actually only states in his appellate brief that appellees destroyed his paper file. However, in his complaint, appellant acknowledges that, after he terminated appellees' legal representation, appellees gave him CD-ROMs representing his entire case file, which they later supplemented with additional digital material. Thus, it appears from the record before us, and appellant does not deny, that he had his legal file available in a digital format from which he could have printed Dr. Ross's reports and attached them to Ratliff's affidavit.

{¶ 16} Further, appellant argues that, although the trial court found there was no evidence to support appellant's claim that Dr. Ross's reports were "unsigned," Ratliff did review the court's June 28, 2012 decision in the original appeal of the board order which stated that Dr. Ross's report was "unsworn." However, notwithstanding the difference in semantics between appellant's use of the term "unsigned" and the original court's use of the term "unsworn," we find appellant's argument is generally irrelevant for purposes of appeal. Appellant does not address or contest the trial court's more important finding that Ratliff's supplemental affidavit failed to take into consideration that there was an issue regarding payment for expert testimony and legal fees. The trial court apparently believed the conflict regarding payment for Dr. Ross's expert testimony and legal fees impacted the execution and submission of Dr. Ross's reports to the board. As Ratliff fails to address this issue in his expert reports, his critique of appellees' failure to present expert testimony to the board is unconvincing.

{¶ 17} In a single sentence in his appellate brief, appellant also argues that it was not necessary for him to have an expert's affidavit of probable cause because a jury could understand appellees' negligent actions without an expert. However, in *McInnis v. Hyatt Legal Clinics*, 10 Ohio St.3d 112 (1984), the Supreme Court of Ohio held that, in a legal malpractice case, expert testimony is generally required in order to prove breach of the duty that the attorney owed to the plaintiff, unless the claimed breach of professional duty is "well within the common understanding of * * * laymen." *Id.* at 113. "Expert testimony is required so that the trier of fact does not have to speculate on the standard of care,

particularly in a complex case involving [matters] which are normally not within the realm of understanding of the layman." *Northwestern Life Ins. Co. v. Rogers*, 61 Ohio App.3d 506, 512 (10th Dist.1989). Thus, "[i]n all but a few cases, expert testimony is required to support allegations of professional malpractice." *Party Dock, Inc. v. Nasrallah*, 10th Dist. No. 99AP-1345 (Oct. 5, 2000), citing *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 130 (1976).

{¶ 18} In the instant case, we are unable to conclude that appellees' negligence, if any, was capable of being determined by laypersons without the assistance of one or more expert witnesses. The issues raised by appellant were the following: (1) appellees failed to retain an expert to testify at the board hearing on his behalf, (2) appellees submitted unsigned expert witness reports during the board hearing, (3) appellees listed ten potential assignments of error on appeal but only developed arguments on five, and (4) appellees failed to argue case law favorable to appellant's position on appeal. Laypersons would not know whether it is necessary for an attorney to retain an expert to testify at a medical board hearing, whether expert witness reports must be signed or sworn to be considered for a board determination, whether certain assignments of error have sufficient merit to present on appeal, or whether certain case law is sufficiently persuasive or applicable to present on appeal. These are matters upon which a legal expert is particularly suited to give an opinion, and many depend on professional judgment and tactical decision-making. Therefore, because these matters are not within the ordinary knowledge of laypersons, appellant was required to support his claim of legal malpractice with expert testimony, and we reject appellant's argument to the contrary. For these reasons, appellant's first assignment of error is overruled.

{¶ 19} Appellant argues in his second assignment of error that the trial court erred when it granted summary judgment on Count 1 of his complaint, which was comprised of his claim for breach of fiduciary duty and breach of contract. Appellant's breach of contract and fiduciary duty claims involved appellant's claim that appellees had a duty to pay Dr. Ross from funds appellant provided to appellees and to ensure that admissible expert medical testimony was submitted to the board. In the trial court's December 3, 2014 judgment, the court found that appellant's breach of contract and fiduciary duty claims were actually claims for legal malpractice, as they concerned alleged deficiencies and omissions in the legal representation of appellant. Thus, the court concluded,

appellant's claim for legal malpractice must fail for the same reasons the court found his other claims for legal malpractice failed in its June 6, 2014 decision; that is, the professional malpractice rule and lack of expert testimony operated to null any claims for legal malpractice.

{¶ 20} When the gist of a complaint sounds in malpractice, other duplicative claims are subsumed within the legal malpractice claim. *Illinois Natl. Ins. Co. v. Wiles, Boyle, Burkholder & Bringardner Co., L.P.A.*, 10th Dist. No. 10AP-290, 2010-Ohio-5872, ¶ 15, citing *Pierson v. Rion*, 2d Dist. No. CA23498, 2010-Ohio-1793, ¶ 14, and *Polivka v. Cox*, 10th Dist. No. 01AP-1023, 2002-Ohio-2420, ¶ 2, fn. 1. " 'Malpractice by any other name still constitutes malpractice.' " *Id.* at ¶ 15, quoting *Muir v. Hadler Real Estate Mgt. Co.*, 4 Ohio App.3d 89, 90 (10th Dist.1982). " 'The term "malpractice" refers to professional misconduct, i.e., the failure of one rendering services in the practice of a profession to exercise that degree of skill and learning normally applied by members of that profession in similar circumstances.' " (Emphasis omitted.) *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, ¶ 15, quoting *Strock v. Pressnell*, 38 Ohio St.3d 207, 211 (1988), citing 2 Restatement of the Law 2d, Torts, Section 299A (1965).

{¶ 21} After our review of the claims in the instant matter, it is clear that the trial court did not err in construing appellant's claims for breach of fiduciary duty and breach of contract as presenting claims for malpractice. In his November 4, 2014 supplemental memorandum in opposition to appellees' motion for summary judgment, appellant summarized his claims in Count 1, arguing that appellees "clearly breached their fiduciary duty and contract duty to pay Dr. Ross from funds provided by Lundeen to ensure that Dr. Ross' admissible expert medical testimony was submitted to the hearing officer. The breach of contract/breach of fiduciary duty pertained to Defendants' failure to disburse funds of family and friends obtained in urgency during the last week of July 2011." Appellant further claimed, "The Defendants' failure to disburse these funds ($8000 and $1500) to Dr. Ross resulted in complete lack of medical expertise and loss at the administrative hearing in action 11-CRF-055." All of these claims overtly raise contentions that appellees breached their obligations and failed to conform to the requisite standard for competent representation, which is one of the hallmark elements of a legal malpractice claim. *See Vahila* at syllabus. Other courts have addressed claims against attorneys for

failing to convey funds to third parties as legal malpractice claims. *See, e.g., Ealy v. Switala*, 2d Dist. No. 21649, 2007-Ohio-3438 (claim that attorneys failed to pay all of plaintiff's medical bills out of his settlement proceeds was claim for legal malpractice); *C.R. Withem Ents. v. Maley*, 5th Dist. No. 01 CA 54, 2002-Ohio-5056 (claim that attorney failed to pay the jury deposit fee was a claim for legal malpractice). As a claim for legal malpractice, appellant was required to support his claim with an expert's affidavit of probable cause, which he failed to do. Therefore, for these reasons, we find the trial court did not err when it granted summary judgment to appellees on Count 1 of appellant's complaint. Appellant's second assignment of error is overruled.

{¶ 22} We will address appellant's third and fourth assignments of error together, as they are related. Appellant argues in his third assignment of error that the trial court erred when it denied his motion to amend his complaint to add a count for conversion of funds. In his fourth assignment of error, appellant argues that the trial court erred when it denied his motion to amend his complaint to add Dr. Cunningham as a defendant and add four counts related to all defendants, including Dr. Cunningham.

{¶ 23} In its November 19, 2014 decision, the trial court denied appellant's November 5, 2014 motion to amend his complaint to add a count for conversion of funds and his November 17, 2014 motion to amend his complaint to add Dr. Cunningham and the four additional counts. The court found undue delay was present. The court reasoned that appellant instituted the case more than two years before and waited until several days after the discovery deadline to serve the discovery requests that produced the information upon which he based his motions to amend. The court found that undue prejudice would result to the present defendants because the case had proceeded more than two years, the discovery and dispositive motion deadlines had passed, and the trial date was less than four months away. As to Dr. Cunningham, the court found he would become a party to a case with a lengthy history in its very, very late stages. Thus, the court determined that permitting the leave sought would result in severe and actual prejudice to defendants.

{¶ 24} Civ.R. 15 provides:

> (A) Amendments
>
> A party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-

eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires. Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within fourteen days after service of the amended pleading, whichever is later.

{¶ 25} Although Civ.R. 15(A) encourages liberal amendment, "motions to amend pleadings pursuant to Civ.R. 15(A) should be refused if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party." *Turner v. Cent. Local School Dist.*, 85 Ohio St.3d 95, 99 (1999). In considering a plaintiff's request to amend its complaint, " 'a trial court's "primary consideration is whether there is actual prejudice to the defendants because of the delay." ' " *Darby v. A-Best Prods. Co.*, 102 Ohio St.3d 410, 2004-Ohio-3720, ¶ 20, quoting *Helman v. EPL Prolong, Inc.*, 139 Ohio App.3d 231, 251 (7th Dist.2000), quoting *Schweizer v. Riverside Methodist Hosp.*, 108 Ohio App.3d 539, 546 (10th Dist.1996). Because the decision of whether to grant or deny a motion to amend is within the trial court's discretion, an appellate court reviews such a ruling under an abuse of discretion standard. *Turner* at 99.

{¶ 26} Here, with regard to his motion to amend his complaint to add a claim for conversion, appellant argues that he was only able to ascertain from appellees' behavior in July 2014 during discovery that appellees had something to hide concerning the IOLTA (Interest on Lawyers Trust Accounts) bank statements. With regard to his motion to add Dr. Cunningham and four counts to his complaint, appellant also argues that he did not become aware of Dr. Cunningham's improper role in the action until July 2014, when he discovered the metadata record in an electronic document supplied to him by appellees that showed Graff actually authored Dr. Cunningham's expert report. With respect to both motions, appellant contends that the time interval from July 2014, when discovery was to conclude, to November 2014, when he filed his motions for leave, does not evince any undue delay and the trial court never made a finding of futility, bad faith, or timeliness.

{¶ 27} We first note that appellant fails to cite any authority for the proposition that a court must make a finding of futility, bad faith, or timeliness. Instead, as explained above, the Supreme Court in *Turner* found that motions to amend pleadings may be

refused if there is a showing of bad faith, undue delay, or undue prejudice. *Turner* at 99. *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend should be freely given unless there is undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of amendment). As these reasons for denying a motion to amend are stated in the disjunctive, any one of them may constitute a sufficient ground on which to deny the motion.

{¶ 28} We also note that appellant provides no explanation as to why he delayed the filing of his November 5, 2014 motion to amend to add a conversion claim, when this claim was based on the same facts he alleged in his original complaint regarding appellees' failure to forward appellant's payments to Dr. Ross. Appellant claims that he did not discover this claim until appellees responded to discovery in October 2014, but he provides no further details. Appellant also fails to explain why he waited until November 17, 2014 to file his motion to amend regarding the metadata he discovered in a document when he claimed to have actually discovered the grounds for these new claims in July 2014. Furthermore, appellant seems to suggest in his brief that the metadata information he discovered in July 2014 was from a document on CD-ROMs containing his legal file, and he admits that he received the CD-ROMs from appellees in July 2012. Thus, it appears that appellant was in possession of the documents that lead to his alleged discovery of the metadata two years before he actually discovered the metadata.

{¶ 29} Notwithstanding, appellant's argument under these assignments of error is that there was no undue delay or prejudice in filing his motions to amend. We disagree with appellant. Appellees point to our decision in *Leatherwood v. Medco Health Solutions of Columbus*, 10th Dist. No. 13AP-242, 2013-Ohio-4780, to support their view that there was undue delay here, and we find it persuasive. In *Leatherwood*, the plaintiff filed an action against the defendants. Eight months later, the defendants filed a motion for summary judgment. In response, the plaintiff filed a motion to amend her complaint. The trial court denied the motion to amend, finding that allowing the amendment would cause undue delay and undue prejudice based on the following, as pertinent to this case: (1) the plaintiff filed her motion to amend only after the defendants filed a motion for summary judgment, (2) the plaintiff filed her motion nearly nine months after the complaint was filed, (3) the discovery cutoff date had passed, and (4) the trial date was

less than three months away. *Id.* at ¶ 12. This court affirmed the judgment of the trial court, citing concurrence with the trial court's reasons. We highlighted that a trial court has discretion in granting or denying a motion to amend, and, given the reasons cited by the trial court, we could not find an abuse of that discretion. *Id.* at ¶ 13.

{¶ 30} The present case presents facts similar to those in *Leatherwood.* In the present case, appellant filed his motions to amend after appellees filed a motion for summary judgment, appellant filed his motions to amend approximately two years after he filed the complaint, the discovery date had passed, and the trial was scheduled to begin in approximately four months. These reasons, in this case, demonstrate undue delay and real prejudice resulting from that delay, insomuch as permitting amendment of the complaint would have necessitated the reopening of discovery, the delaying of the trial to allow additional pretrial preparations, the potential filing of new motions for summary judgment, and the need for further expert testimony to refute appellant's new claims. *See, e.g.*, *Porter v. Probst*, 7th Dist. No. 13 BE 36, 2014-Ohio-3789, ¶ 15 (motion to amend complaint denied based upon prejudice because the matter had been pending off and on for over three years, the deadline for witness disclosures had passed, defendants had already filed a motion for summary judgment, the deadline for dispositive motions had passed, the trial was slated to occur in two months, and allowance of the amendment clearly would have delayed the proceedings because it would have resulted in additional discovery, including the retaking of some depositions as well as the filing of an additional motion for summary judgment); *Nationwide Mut. Ins. Co. v. Am. Elec. Power*, 10th Dist. No. 08AP-339, 2008-Ohio-5618, ¶ 21 (the plaintiffs' undue delay would have resulted in prejudice to the defendant because the plaintiffs filed their motion to amend after the defendant had completed discovery and moved for summary judgment, amendment would have necessitated reopening the discovery period to allow the defendant to further depose the plaintiffs' expert witness, amendment would have required the defendant to conduct additional pretrial preparations, and amendment would have required the defendant to obtain expert testimony and/or other evidence to refute the new claim). The prejudice to Dr. Cunningham under the circumstances in this case is evident. The case had already been pending for approximately two years and the case had an extensive history of pleadings, motions, and discovery. *See, e.g., Morrison v. Gugle*, 142 Ohio App.3d 244, 261-62 (10th Dist.2001) (court denied motion to amend complaint to add

new defendants and new claims against existing defendants that was filed three months after the close of discovery; the amendment would cause significant added expense and substantial delay to the prejudice of current defendants and the additional parties the plaintiff sought to add). Therefore, for these reasons, we find the trial court did not abuse its discretion when it denied appellant's motions to amend, and we overrule appellant's third and fourth assignments of error.

{¶ 31} Accordingly, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BROWN, P.J., SADLER and LUPER SCHUSTER, JJ., concur.

_____